UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STANFORD HEALTH CARE,<br><br>   Plaintiff,<br><br> v.<br><br>CHEFS WAREHOUSE, INC., WELFARE BENEFIT PLAN, et al.,<br><br>   Defendants. | Case No. 5:22-cv-07737-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 21 |

Plaintiff Stanford Health Care brings suit against Defendants The Chef's Warehouse, Inc., Welfare Benefit Plan and Trustmark Health Benefits, Inc., alleging that it did not receive adequate payment for non-emergency medical services provided to Defendants' plan enrollees. Plaintiff asserts one UCL "unlawful" claim based on a California health insurance regulation and one claim for an alleged open book account between the parties. Defendants have moved to dismiss both claims, and the Court took Defendants' motion under submission without oral arguments on May 25, 2023. Based on the foregoing, the Court GRANTS the motion and DISMISSES the First Amended Complaint WITH LEAVE TO AMEND.

**I. BACKGROUND**

Plaintiff Stanford Health Care is a public benefit corporation that provides medical services to patients. First Am. Compl. ("FAC") ¶ 1. Defendants The Chef's Warehouse, Inc., Welfare Benefit Plan and Trustmark Health Benefits, Inc. ("Defendants") are Delaware entities that are in the business of "arranging, providing, issuing, financing, underwriting, administering, sponsoring, and/or paying for the provision of health care services to its members." *Id.* ¶¶ 2–3.

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
1

Between December 2020 and June 2021, Plaintiff provided non-emergency hospital services to six patients ("Patients") who were enrollees in Defendants' preferred-provider-organization or point-of-sale commercial health plans ("Plans").[1] FAC ¶ 8; *id.*, Ex. 1; *see also* Decl. Lloyd Sarrel, Ex. 1 ("Plan"), ECF No. 15-2. Plaintiff does not have a contract with Defendants to provide non-emergency hospital services to the Patients, but Defendants authorized the provision of the services. *Id.* ¶¶ 9–10.

Plaintiff alleges that the "reasonable value" of its hospital services was at least $519,250,73, which represents Plaintiff's "usual and customary full bill charges." FAC ¶ 13. Plaintiff submitted its bills to Defendants for payment, but Defendant only paid a portion, leaving a balance of $453,916.01. *Id.* ¶¶ 13–15. Plaintiff alleges that Defendants did not pay the amount set forth in the Patients' "Evidence of Coverage"[2] plans (as they were allegedly required), but instead paid an amount determined by a third party, ELAP Services, LLC. *Id.* ¶¶ 20–23.

Plaintiff filed suit in this Court on December 7, 2022, originally seeking damages for breach of oral contract, breach of implied-in-fact contract, and quantum meruit. ECF No. 1. Defendants moved to dismiss the complaint (ECF No. 15), and Plaintiff subsequently filed the FAC, replacing their previous claims with a UCL claim and an open book account claim (ECF No. 18). Defendants filed a subsequent motion to dismiss the FAC, and the Court granted the parties' stay of discovery pending the resolution of the motion. ECF Nos. 21, 29.

II. **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion

---

[1] The Court will take judicial notice of the Plan because it has been incorporated by reference into the FAC (FAC ¶¶ 8, 21, 23), and Plaintiff has not disputed the authenticity of those documents. *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1067 (N.D. Cal. 2017) ("Courts routinely take judicial notice of ERISA plan documents.").

[2] "Under California law, the ability of a medical provider with an assignment from its patients to recover from a health insurer for nonemergency services generally derives from and is limited by the terms of coverage (the 'evidence of coverage' or 'EOC') in the patients' health insurance policy." *TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807, at *2 (C.D. Cal. Mar. 4, 2019).

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
2

to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plausibility standard does not prohibit a plaintiff from pleading *facts* upon "information and belief," but the allegation must still be "based on factual information that makes the inference of culpability plausible." *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (citing *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). "A conclusory allegation based on information and belief remains insufficient." *Id.*

## III.  DISCUSSION

The FAC asserts two claims: (1) a violation of the UCL based on Defendants' failure to comply with California Code of Regulations, title 28, § 1300.71(a)(3)(C), requiring non-emergency service providers to be reimbursed at "the amount set forth in the enrollee's Evidence of Coverage"; and (2) Defendants became indebted to Plaintiff on an open book account. Defendants move to dismiss both claims. The Court addresses each in turn.

### A.  UCL "Unlawful" Claim

Defendants first move to dismiss the UCL claim on three grounds: (1) the UCL claim is expressly preempted by the Employee Retirement Income Security Act ("ERISA")[3]; (2) the regulation underlying the "unlawfulness" does not apply to Defendants; and (3) Plaintiff does not have standing under the UCL because it did not confer money or property to Defendants.

#### 1.  ERISA Preemption

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Meridian Treatment Servs. v. United Behav. Health*, 2020 WL 7000073, at *9 (N.D. Cal. July 20, 2020) (quoting *Shaw v. Delta Air*

---

[3] Strangely, Plaintiff's opposition spends most of its pages on *complete* preemption under ERISA § 502(a), *see* Opp. 6–12, even though Defendants invoked *conflict* preemption under ERISA § 514(a), codified at 29 U.S.C. § 1144(a). *See* Mot. 10–12. Even more perplexing, the section in the opposition that purports to discuss conflict preemption does not actually engage with preemption but is instead an amalgamation of unrelated statements of law on federal question jurisdiction and the well-pleaded complaint rule, none of which are relevant here. Opp. 5–6.

Case No.:  5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
3

*Lines, Inc.*, 463 U.S. 85, 97 (1983)).

The Court begins with the Ninth Circuit's observation that "courts have held that ERISA *does not* preempt a third-party provider's independent state law claims against a plan." *The Meadows v. Emps. Health Ins.*, 47 F.3d 1006, 1010 (9th Cir. 1995) (emphasis added) (citing *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990)). Chief Judge Seeborg also recently affirmed this principle in an action brought by the same Plaintiff against the same Trustmark Defendant alleging a near-identical theory of UCL liability. *See Stanford Health Care v. Trustmark Servs. Co.*, No. 22-cv-03946-RS, 2023 WL 2743581, at *3 (N.D. Cal. Mar. 31, 2023) (collecting cases where "[o]ther district courts in the Ninth Circuit have applied this standard to cases such as this, where a healthcare provider seeks repayment from an insurer under California law"). The Court concurs with the overall weight of authority that, as a general matter, UCL claims asserted by a medical provider against an insurer for fraudulent, unlawful, or unfair business practices would *not* be preempted by ERISA.

That said, the Court will note here that Plaintiff's particular UCL claim runs precariously close to the boundaries of preemption. The specific UCL "unlawful" claim here is predicated on alleged violations of § 1300.71(a)(3)(C) of the California Code of Regulations, which creates a statutory obligation for "non-emergency services provided by non-contracted providers to PPO and POS enrollees" to be reimbursed at "the amount set forth in the enrollee's Evidence of Coverage." FAC ¶ 20 (citing Cal. Code Regs. tit. 28, § 1300.71(a)(3)(C)). In other words, the FAC alleges that Defendants failed to reimburse the Plaintiff at the agreed-upon rate in the Patients' health insurance plan. Although mere reference to a term in an ERISA plan does not render a claim preempted, the FAC's alleged violation of § 1300.71 appears to require more than a quick glance at the Patients' Plans; the claim would need substantial contractual interpretation of what the "allowable claim limit" would be for Plaintiff, as a "nonpreferred provider." *See* Plan, at 17 ("A nonpreferred provider does not have an agreement in effect with the Preferred Provider Organization. The Plan will allow *only the allowable claim limit* as a covered expense.") (emphasis added), 83 (defining "Allowable Claim Limit"). Moreover, at least one district court

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
4

has expressed serious doubts as to whether providers "can bring claims based upon statutory violations of insurers' duties in the context of insurance policies," including § 1300.71, without running into ERISA preemption. *Complete Infusion Care, CIC, Inc. v. Aetna Life Ins. Co.*, 2016 WL 471207, at *3 (C.D. Cal. Feb. 4, 2016) (finding statutory claims preempted where plaintiff failed to "explain how [it] can bring claims based upon statutory violations of insurers' duties in the context of insurance policies, yet at the same time allege that all of its claims are derived solely from [plaintiff's] interactions with [insurer] and have nothing to do with any insurance policy"). The difficulty in evaluating the preemptive impact of ERISA here is exacerbated by the FAC's barebone allegations, which obfuscates the contours of the specific UCL claim asserted and impedes a fulsome ERISA preemption assessment.

In short, the Court recognizes that UCL claims brought by providers against insurers are generally not preempted by ERISA. However, because the FAC has failed to specify the legal contours of Plaintiff's specific UCL claim (discussed further below), the Court cannot ascertain whether a UCL "unlawful" claim based on § 1300.71(a)(3)(C) involves such a "connection with or reference to" Patients' Plans to be expressly preempted by ERISA.

### 2. Sufficiency of UCL Allegations

Defendants argue that, even if ERISA does not preempt the UCL claim, the claim would still fail because (1) Defendants are not subject to the specified regulations, and (2) the FAC does not allege that Defendants acquired any money or property from Plaintiff. Mot. 12–14.

With respect to Defendants' first contention, the Court cannot discern from the FAC—or Defendants' motion for that matter—whether Defendants are subject to the regulations asserted. Defendants' motion submits that California Health & Safety Code § 1371.4 does not apply to out-of-state self-funded plans. Mot. 12–13. That very well may true, but the FAC does not cite a Health & Safety Code section; it invokes Title 28 of the California Code of Regulations, section 1300.71(a)(3)(C). FAC ¶ 20. Defendants' reply brief does not address this discrepancy, but instead reiterates the erroneous assertion that "Plaintiff's UCL claim is founded on alleged violations of the California Health & Safety Code." Reply 5. This argument fails as a result.

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
5

1    Defendants' second argument, however, is on firmer footing. The FAC seeks restitution in
2    the amount of $453,916.01, because damages are not available as a remedy for violations of the
3    UCL. *See, e.g.*, *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000). The
4    Court may only order restitution to "persons from whom money or property has been unfairly or
5    unlawfully obtained." *Id.* at 172. The FAC, however, contains no allegation that Defendants (the
6    insurer) unlawfully acquired money or property from Plaintiff (the medical provider). To the
7    contrary, the FAC's allegations and the opposition contain several indicia that Plaintiff is not
8    seeking restitution but rather a disguised claim for damages. For instance, the sum that Plaintiff
9    demands is described as "Stanford Hospital's usual and customary full bill charges" and "the
10   reasonable value for the hospital services rendered to the Patients" (FAC ¶¶ 13–14), both of which
11   reflects Plaintiff's *expectations* of the value for what it stood to gain, instead of what it purportedly
12   lost. Plaintiff's opposition contains even more glaring indications of its true intentions, openly
13   stating that "Stanford Hospital's FAC is based upon independent state law legal duties to *recover*
14   *damages*," and that Plaintiff is suing Defendants "as an *independent entity claiming damages*."
15   Opp. 9. Chief Judge Seeborg, when confronted with similar allegations and remedies, also found
16   that the same Plaintiff failed to allege restitutionary relief on the same basis. *See Stanford Health*
17   *Care v. Trustmark Servs. Co.*, 2023 WL 2743581, at *4. Accordingly, the Court finds that the
18   FAC has failed to allege the availability of restitution as a remedy under the UCL.
19   In addition to Defendants' two arguments, the Court further finds that the FAC has failed
20   to plead sufficient factual and non-conclusory allegations that support its claim for relief under the
21   UCL and § 1300.71(a)(3)(C). As the Court referenced above, Plaintiff's UCL "unlawful" claim is
22   predicated on Defendants' purported violations of Title 28 of California Code of Regulations,
23   section 1300.71. FAC ¶ 20. Section 1300.71 provides, in relevant part, that for "non-emergency
24   services provided by non-contracted providers to PPO and POS enrollees," reimbursement of a
25   claim means "the amount set forth in the enrollee's Evidence of Coverage." Cal. Code Regs. tit.
26   28, § 1300.71(a)(3)(C). Accordingly, Defendants are only obligated to reimburse Plaintiff for the
27   amounts established in the Plans' "Evidence of Coverage."
28   Case No.:   5:22-cv-07737-EJD
     ORDER GRANTING MOTION TO DISMISS
                                                    6

1   The FAC, however, only contains conclusory allegations—made only on information and
2   belief—as to how much Defendants were obligated to pay under the Plans' "Evidence of
3   Coverage" ("EOC").  For instance, Plaintiff alleges (appropriately) that Defendants used a third-
4   party "designated decision maker" ("DDM") to determine the payment amounts, but then
5   (inappropriately) assumes that this amount was less than the amount required by the EOC.  FAC
6   ¶¶ 21, 23.  There are no allegations, critically, as to what the correct amounts should have been
7   under the EOC.  Nor do the recitations of "informed, believes, and thereon alleges" transform
8   conclusory statements into factual assertions, especially when there are no allegations about the
9   facts that supposedly informed said beliefs.  Without allegations of the specific terms and amounts
10  permitted by the EOC, the FAC essentially alleges that Plaintiff was paid less than it would have
11  liked and, therefore, its payment *must have been* lower than whatever amounts the EOC allow.
12  However, a "provider isn't entitled to payment from an insurer beyond what the EOC provides
13  'just because the plaintiff believes that the EOC's provisions unfair.'"  *TML Recovery, LLC v.
14  Humana Inc.*, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019); *see also Allied Anesthesia Med.
15  Grp., Inc. v. Inland Empire Health Plan*, 80 Cal. App. 5th 794, 813 n.13 (2022) (noting that "the
16  amount billed [by medical providers] is almost invariably more than the amount set forth in the
17  plan"), *review denied* (Sept. 28, 2022).  Accordingly, the Court finds that allegations of a third-
18  party DDM alone cannot support an inference that Defendants paid less than required by the EOC.
19  In summary, the Court finds that the FAC has failed to state a claim for violations of the
20  UCL "unlawful" prong because Plaintiff has not pled the allegations necessary for a §
21  1300.71(a)(3)(C) violation and has not alleged it is entitled to restitutionary relief.  Accordingly,
22  the UCL claim is DISMISSED.  However, the Court cannot ascertain that further amendments
23  would be futile, so it will permit Plaintiff LEAVE TO AMEND.

24  **B.     Open Book Account Claim**

25  Defendants also move to dismiss Plaintiff's "open book account" claim because (1) it is
26  also preempted by ERISA; (2) Plaintiff has not alleged it had an agreement with Defendant; and
27  (3) the "open book account" claim is barred by the Patients' Plan contracts.  Mot. 14–18.

28  Case No.:   5:22-cv-07737-EJD
    ORDER GRANTING MOTION TO DISMISS
    7

1    "An open book account is a detailed statement that constitutes the principal record of the
2    transactions between the creditor and debtor arising out of a contract or fiduciary relationship.
3    The statement details the debits and credits in connection with the debtor/creditor relationship."
4    *Cusano v. Klein*, 264 F.3d 936, 942 n.2 (9th Cir. 2001) (citing Cal. Civ. Proc. Code § 337a). "A
5    book account is created by the agreement or conduct of the parties thereto. The mere recording in
6    a book of transactions or the incidental keeping of accounts under an express contract does not of
7    itself create a book account." *Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n*
8    *Benefit Plans*, 2011 WL 13176423, at *3 (C.D. Cal. Jan. 13, 2011).

The Court finds that Plaintiff's open book account claim fails on at least two grounds: (1) the FAC has failed to allege the requisite facts for an open book account claim; and (2) if this claim restates Plaintiff's general allegation that it has been inadequately reimbursed for services as an out-of-network provider, this claim would be preempted by ERISA.

### 1. Principal Record

To begin, the Court finds that the FAC has failed to allege the core element of an open book account claim—the book account. California Code of Civil Procedure § 337a specifically defines a "book account" as a "detailed statement which constitutes the principal record." Cal. Civ. Proc. Code § 337a. The account must be "kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." *Id.* The FAC has identified no such contemporaneous principal record, and Plaintiff's recollection of the relevant allegations notably fails to state the existence of such a record. Opp. 11 (citing FAC ¶¶ 9–15, 35–37). Nor has the FAC alleged any facts about the "spreadsheet attached [to the FAC] as Exhibit A" that would permit the Court to infer that it is the "detailed statement" or "principal record" of Plaintiffs' debts and credits.[4] FAC ¶ 8. The one allegation that could even potentially be construed as the "principal record" is the

---

[4] Indeed, the column titled "Underpaid" would suggest that Exhibit A was created for the purposes of litigation, rather than for use as the contemporaneous "principal record."

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
8

FAC's conclusory allegation that "Defendants became indebted to Stanford Hospital within the last two years on an open book account."  However, labels and conclusions simply will not suffice to meet Plaintiff's pleading obligations.  *See ABC Servs. Grp., Inc. v. Health Net of California, Inc.*, 2020 WL 2121372, at *8 (C.D. Cal. May 4, 2020) (dismissing open book account because plaintiff "has recited only the name of the cause of action and the amount supposedly owed"), *rev'd in part on other grounds*, No. 20-55821, 2022 WL 187849 (9th Cir. Jan. 20, 2022).

Because "all Plaintiffs have is unconnected patient records that would have to be compiled into an 'abstract' retroactively documenting Plaintiffs' medical activity" and there is "no evidence of an agreement between the parties to document their transactions through an open book," the FAC has failed to allege the necessary facts for a claim on an open book account.  *Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*, 2011 WL 13176423, at *4 (C.D. Cal. Jan. 13, 2011) (holding that medical providers' open book account claim against insurer failed for lack of "principal record" or "agreement between the parties to document their transactions through an open book").  Therefore, Plaintiff's claim against the purported open book account shall be DISMISSED.  Because the FAC's deficiencies could conceivably be cured through additional factual allegations, the Court will grant Plaintiff LEAVE TO AMEND.

### 2. ERISA Preemption

Although it has already determined the FAC's open book account claim to be deficient, the Court will further note that, if Plaintiff intends to maintain this claim to recover the balance of its payments from Defendants, the claim would likely be preempted by ERISA.

The Court previously summarized at Section III.A.1 above the standards for ERISA preemption, and it finds that the FAC's book account allegations reflect a "connection with or reference to" the Patients' Plans.  Plaintiff has not cited—and the Court has been unable to locate—a single case where ERISA's express conflict preemption permitted a provider to maintain a California open book account claim.  Opp. 10–12.  To the contrary, several district courts have found these claims to be preempted by ERISA because they did not arise out of an independent legal duty between the provider and the insurer.  *See David M. Lewis, D.M.D. v. William Michael*

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS

9

*Stemler, Inc.*, 2013 WL 5373527, at *5 (E.D. Cal. Sept. 25, 2013) (holding provider's open book account claim to be preempted because it "restates plaintiffs' general allegation that they have not been reimbursed for services they provided to plan members as an out-of-network provider; it is not based on an independent legal duty to pay"); *NAMDY Consulting Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 WL 6136776, at *2 (C.D. Cal. July 17, 2018) (holding that the open book account claim brought by a health care providers collection agency was preempted by ERISA because "claims to enforce the terms of these enrollees' plans 'could have [been] brought . . . under ERISA § [1132(a)(1)(B)'"); *see also Smith v. Fid. Workplace Servs. LLC*, 2022 WL 612665, at *2 (N.D. Cal. Mar. 1, 2022) (finding all state law claims, including open book account, to be preempted by ERISA); *Complete Infusion Care*, 2016 WL 471207, at *3 (same). Plaintiff's attempt to distinguish these cases is unpersuasive, consisting only of a string citation with parentheticals and a remark that these cases have "distinguishable facts." Opp. 11.

Given the overwhelming weight of district courts that have found claims on open book accounts to be preempted by ERISA, the Court is doubtful that Plaintiff will be able to amend this claim to avoid ERISA preemption. However, as it has indicated elsewhere in this Order, the Court is unable to discern the contours of Plaintiff's legal theories and, therefore, cannot conclude that Plaintiff could not possibly allege an open book account claim that is not preempted by ERISA.

## IV.   CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is GRANTED. The First Amended Complaint is DISMISSED WITH LEAVE TO AMEND. Any amendment shall be filed within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated: September 29, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-07737-EJD
ORDER GRANTING MOTION TO DISMISS
10